**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ROBERT L. BEAN** | ) | |
| **ID# 1405300** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:09-CV-1137-D (BH)** |
| | ) | |
| **RICK THALER,[1] Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has been referred for findings, conclusions, and recommendation.

## I.  BACKGROUND

On February 28, 2009, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions for possessing with intent to deliver cocaine, being a felon in possession of a firearm, and possessing an illegal weapon in cause numbers 24350-422, 24673-422, and 24680-422, respectively.  Respondent is Rick Thaler, Director of TDCJ-CID.

**A.  <u>Procedural and Factual History</u>**

The State indicted petitioner for possession with intent to deliver four grams or more of cocaine, possession of a firearm by a felon, and possession of an illegal short-barreled shotgun on or about March 1, 2006, in Kaufman County, Texas.  The second and third indictments also alleged two enhancement paragraphs. (Trial Transcript[Cause #24350-422]:3);  Tr.[#24673-422]:3; Tr.[#24680-422]:3).  Petitioner pled not guilty, was tried before a jury on October 3, 2006, and was

---

[1]  Petitioner initially named Nathaniel Quarterman as respondent.  On July 15, 2009, Rick Thaler succeeded Mr. Quarterman as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure.

convicted of all three charges. (R. 6:126-28).  After a punishment hearing, the trial court found the enhancement paragraphs to be true and sentenced petitioner to forty years' imprisonment for possession with intent to deliver, twenty years for possession of a firearm by a felon, and thirty years for possession of an illegal weapon, to be served concurrently. (R. 8:60).

The state appellate court recounted the evidence presented at trial as follows:

> Police officers with Terrell Police Services executed a search warrant on a house in Terrell and arrested appellant and four others who were in the house.  During the search, led by narcotics investigator Jeremy Mack, police seized crack cocaine, marijuana, and drug paraphernalia in plain view; crack cocaine hidden under a chair cushion; a sawed-off shotgun from under a bed; a razor blade with a white powder residue; $561 from appellant's front pants pocket, folded over and organized by 20s, 10s, 5s, and 1s; and papers belonging to appellant.  Appellant was the only person in the house in possession of cash.  Additionally, police observed that the table the razor blade was found on was covered with a white powder substance and appeared to have been used to cut crack cocaine.  The police also found clothes appellant had been seen wearing piled on the floor in the same bedroom where the shotgun was found.  Outside on the ground, by a vehicle parked in the driveway, the police seized crack cocaine, a baggie containing cocaine residue, a ten dollar bill, and drug paraphernalia.
>
> Appellant was charged with possession of cocaine with intent to deliver.  He was charged with two offenses related to the sawed-off shotgun: unlawful possession of a firearm by a felon and possession of a prohibited weapon.

*Bean v. State*, Nos. 05-06-01487-CR, 05-06-01488-CR, 05-06-01489-CR, slip op. at 2 (Tex. App.–Dallas, Nov. 8, 2007, pet. denied).

On direct appeal, petitioner contended that the evidence was insufficient to support his conviction for possession with intent to deliver, that the trial court erred in overruling his motion to suppress evidence seized at the house, that his two convictions for possession of a weapon violated his constitutional right to be free from double jeopardy, and that his trial counsel was ineffective for

failing to call certain witnesses at trial. Petitioner's convictions were affirmed on direct appeal, and his petitions for discretionary review were subsequently denied. *Id.*

Petitioner filed state habeas applications in each of the three cases raising the same claims as in his federal petition. (S.H.Tr.[WR-44,893-02]:26-56; S.H.Tr.[WR-44,893–03]:19-48; S.H.Tr.[WR-44,893-04]:137-75). The Court of Criminal Appeals denied relief in each of the three cases without written order and without any findings being made by the trial court. (*Id.* at covers).

On February 28, 2009, petitioner filed his petition for federal habeas relief in the Southern District of Texas. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9).[2] After the case was transferred to this district, petitioner filed an amended petition that was received by the Court on July 14, 2009. Respondent filed a response on December 4, 2009, and provided the state court records. Petitioner filed a reply brief on January 12, 2010.

**B.   Substantive Issues**

Petitioner claims that: 1) the evidence is insufficient to support his convictions; 2) the search warrant was invalid; 3) his trial counsel was ineffective for failing to call certain witnesses to testify at the guilt phase of the trial; and 4) the trial court erred in denying his motion to suppress evidence seized at the house where petitioner was arrested. Respondent does not contend that petitioner failed to exhaust any of his claims at the state level.

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

---

[2] *See also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-
> ceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unrea-
> > sonable application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determin-
> > ation of the facts in light of the evidence presented in the State court
> > proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-

ural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). Here, the denial of petitioner's state

writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of

Criminal Appeals in such writ. The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus

apply to the claims raised in petitioner's federal petition.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established fed-

eral law within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to

that reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*,

529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must

issue "if the state court identifies the correct governing legal principle from [the] Court's decisions

4

but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. SEARCH AND SEIZURE

In his second ground for relief, petitioner asserts that the search warrant that led to the search of the house and his arrest was invalid. In his fourth ground, he claims that evidence seized during that search was seized illegally and should have been suppressed by the trial court.

It is well-settled that a claim that evidence obtained pursuant to an unconstitutional search and seizure was admitted at trial cannot be a basis for federal habeas relief if the state provided the opportunity for a full and fair litigation of the Fourth Amendment claim. *Williams v. Taylor*, 529 U.S. 362, 375 (2000); *Stone v. Powell*, 428 U.S. 465, 482 (1976). A full and fair hearing contemplates that where there are factual disputes, the matter must be considered by the original

5

fact-finding court, and there must be meaningful appellate review available even if unused.  *See Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986).   The Fifth Circuit has also stated that a Fourth Amendment claim has been fully and fairly litigated in state court where the material facts were adequately developed in state court and there is no undeveloped evidence sufficient to call into question the reliability of the state court's determination. *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994); *Streetman v. Lynaugh*, 812 F.2d 950, 958 (5th Cir. 1987).

In this case, the trial court held a pre-trial hearing regarding the validity of the search warrant and subsequent seizure of evidence. (R. 4:7-39).   These claims were also raised as points of error on direct appeal and ruled upon by the state appellate court.  *Bean v State*, slip op. at 10-12.   They were also raised as grounds for relief at the state habeas level and denied again on their merits. Petitioner has not alleged any undeveloped facts sufficient to call into question the reliability of the state court's determination.   These issues were fully and fairly litigated at the state level, and petitioner's second and fourth grounds for relief should be denied.

### III.  SUFFICIENCY OF THE EVIDENCE

In his first ground for relief, petitioner asserts that the evidence is insufficient to support his three convictions because neither the cocaine, shotgun, nor any other contraband was found on his person or in close proximity to him at the time of arrest.   He points out that four other people were present in the house when he was arrested, and there was no evidence that he owned,  leased or was in exclusive control of the residence.

"A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense." *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992).   Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such

claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979).  When reviewing such claims against the underlying conviction, the relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  When "faced with a record of historical facts that supports conflicting inferences [courts] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.  Further, under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995).  "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992).  Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000).  They do not "second-guess[] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).  The *Jackson* standard applies whether the evidence is direct or circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).

In reviewing a challenge to the sufficiency of the evidence supporting the underlying conviction, "*Jackson* requires . . . that the review occur 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Bledsue v. Johnson*, 188 F.3d 250, 259 (5th Cir. 1999) (quoting *Jackson*, 443 U.S. 324 n.16).  The federal courts must "independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* sufficiency inquiry." *Id.* at 260.  When considering a claim of insufficient evidence to support the underlying conviction on federal habeas review, this Court should only determine "whether the

evidence was constitutionally sufficient to convict [petitioner] of the crime charged." *Id.* at 262

(quoting *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991)).

A.   **Possession of Cocaine**

Petitioner was indicted for knowingly or intentionally possessing, with intent to deliver,

cocaine in an amount more than four grams but less than 200 grams (Tr.[Cause #24350-422]:3). *See*

TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon 2003).

In order to be convicted of this offense under Texas law, the State must show that a person

exercised actual care, custody, control, or management of the cocaine, and that he knew it was

contraband. *See* § 481.002(38); *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).[3]  In

other words, the State must present evidence that affirmatively links the defendant to the controlled

substance. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).  This evidence, whether

direct or circumstantial, "suffices for proof that he possessed it knowingly." *Id.*  The evidence "must

establish, to the requisite level of confidence, that the accused's connection with the drug was more

than just fortuitous.  *Id.*  "No set formula of facts exists which would dictate a finding of an

'affirmative link' sufficient to support an inference of knowing possession of contraband.   Each

case depends on the evidence adduced therein." *Porter v. State*, 873 S.W.2d 729, 732 (Tex. App.

– Dallas 1994, pet. ref'd) (citation omitted).  The courts of Texas "have divined numerous factors

useful in determining whether the accused's link to the contraband was more than mere fortuity."

*Park v. State*, 8 S.W.3d 351, 353 (Tex. App. – Amarillo 1999, no pet.).  "The number of factors

present is not as important as the 'logical force' or the degree to which the factors, alone or in

---

[3]  In the jury instructions for the possession with intent to deliver cocaine charge, a brief definition of the law of parties
was included.  (Tr.:#24350-422:63).  The state appellate court, however, did not take this instruction into consideration
when ruling on whether the evidence was sufficient to support the conviction.  This Court will likewise only consider
whether the evidence is sufficient to support petitioner's conviction for possession with intent to deliver as the primary
actor, not as a party.

combination, tend to affirmatively link the accused to the contraband." *Wallace v. State*, 932 S.W.2d 519, 524 (Tex. App. – Tyler 1995, pet. ref'd). Sufficient evidence supports a possession conviction "if the evidence establishes, beyond reasonable doubt, [defendant's] knowing link to the drugs." *Park*, 8 S.W.3d at 353.

Further, a showing of actual or constructive possession suffices to show the requisite control. *See McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); *Porter*, 873 S.W.2d at 734. "Constructive possession" means "the knowing exercise of, or knowing power to exercise, dominion and control over contraband." *Porter*, 873 S.W.2d at 734; *accord McGoldrick*, 682 S.W.2d at 578 (recognizing "that 'possession' means more than being where the action is; it involves the exercise of dominion and control over the thing actually possessed"). The State may establish constructive possession "by showing ownership, dominion or control over contraband." *Porter*, 873 S.W.2d at 734. As long as the defendant "has actual ownership of contraband or a power to exercise control over contraband, he will be in constructive possession of contraband." *Id.* "The issue is whether the evidence will support a reasonable inference that the defendant knowingly possessed the contraband." *Victor v. State*, 995 S.W.2d 216, 220 (Tex. App. – Houston [14th Dist.] 1999, pet. ref'd).

Here, the state appellate court noted in its opinion that Texas courts have looked at a number of non-exclusive factors to establish possession of contraband, including: 1) whether the defendant was present when the search was conducted; 2) whether the contraband was in plain view; 3) the defendant's proximity to and accessibility of the contraband; 4) whether a defendant is under the influence of a controlled substance when arrested; 5) whether a defendant possessed other contraband when arrested; 6) whether he made incriminating statements; 7) whether he attempted to flee; 8) whether he made furtive gestures; 9) whether there was an odor of contraband; 10) whether other contraband or drug paraphernalia were present; 11) whether the defendant owned or

9

had a right to possess the place where the drugs were found; 12) whether the place where the drugs were found was enclosed; 13) whether the defendant was found with a large amount of cash; and 14) whether the conduct of the defendant indicated a consciousness of guilt. *Bean*, slip op. at 8, *citing Evans v. State*, 202 S.W.3d 158, 162-63 (Tex. Crim. App. 2006).

Petitioner argues that no evidence presented at trial showed that he owned or rented the house where he was arrested, the cocaine was not found on him, and there were others who were also arrested in the house. The trial testimony established that: 1) the cocaine found under the chair cushion was enough cocaine for the personal use of the five people in the house and for additional distribution; 2) there was a substantial amount of crack cocaine in plain view on a table in the kitchen; 3) drug paraphernalia was found in plain view throughout the house; 4) marijuana was found in plain view in one of the bedrooms; and 5) several personal documents with petitioner's name on them were found in this same bedroom. (R. 6:55-7, 60-2). All of this evidence, when viewed in the light most favorable to the verdict, is evidence that petitioner was well aware that contraband was in the house where he was arrested. Moreover, one of the police officers who was present at the time of the search and arrests testified that he saw several items of clothing lying on the floor in the bedroom that he had personally seen petitioner wearing, the bedroom had a bed, petitioner was wearing pajamas when he was arrested, he had seen petitioner enter and exit the house a number of times during surveillance of the house, petitioner was the only person arrested at the house who had money, and he had over $500 in a plastic bag inside the pocket of the pants he was wearing. Finally, two people were arrested in the front yard, one of whom was sitting in the passenger seat of a car, with a ten dollar bill and a rock of crack cocaine on the ground next to that car door. (R. 6:58, 62-4, 67). From this evidence, the jury could have concluded that petitioner was more than a visitor to the house, that he slept and changed clothes at the house, and that as the only

10

person who had any money on him, he was the one selling the crack cocaine to people who came to the house.

There were sufficient links present to support a reasonable inference that petitioner possessed cocaine with intent to deliver, and viewed in the light most favorable to the State, the evidence is sufficient to support petitioner's conviction for possession with intent to deliver.  The state appellate court's decision on this issue is not an unreasonable application of the *Jackson v. Virginia* standard.

**B.     Possession of Shotgun**

Petitioner was also convicted of possessing an illegal weapon and of being a felon in possession of a firearm.  He does not dispute that he is a felon or that the shotgun found at the house was an illegal short-barreled shotgun; he contends that the evidence is insufficient to establish that he actually possessed the gun.

In order to prove that petitioner was guilty of these two offenses, the State had to establish that petitioner intentionally or knowingly possessed the shotgun found under the bed in one of the bedrooms.  *See* TEX. PEN. CODE ANN. §§ 46.04(a), 46.05(a)(3) (Vernon 2003).  It was required to "show (1) that the accused exercised actual care, control, or custody of the firearm, (2) that the accused was conscious of his or her connection with it, and (3) that he or she possessed the firearm knowingly or intentionally." *Smith v. State*, 118 S.W.3d 838, 842 (Tex. App. – Texarkana 2003, no pet.).  "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PENAL CODE ANN. § 6.01(b) (Vernon 2003).  The State must prove that the accused's connection to the firearm was more than merely fortuitous.  *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).  In other words, the State must affirmatively link the firearm to the accused by demonstrating that "the accused was aware of the object, knew what it was, and recognized his

or her connection to it." *Smith*, 118 S.W.3d at 842.

The evidence linking petitioner to the shotgun includes testimony that clothes he was seen wearing on several occasions was found two feet from the gun, and personal papers belonging to him were lying on top of the clothes. (R. 6:64). Officer Mack also testified that it appeared that this was the only bedroom that was lived in because it contained a bed, a lamp on a table, and personal items and clothing, while one of the other bedrooms appeared to be used as a "junk" room and the third bedroom was largely empty. (R. 6:90-1). Viewed in the light most favorable to the State, this evidence supports an inference that petitioner was living in that room and owned the shotgun found under the bed. Petitioner has failed to show that the state court's denial of this claim at the state habeas level is contrary to federal law, and he is not entitled to relief on this ground.

## V. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his third ground for relief, petitioner asserts that his trial counsel was ineffective for failing to call certain witnesses to testify at the guilt phase of the trial.

To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

12

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Before the sentencing hearing began, petitioner's attorney stated on the record that he had chosen not to call certain witnesses at the guilt phase of the trial that petitioner wanted to call, including Burnest Rhodes, Rickey Nop, Mabel Hart, Richard King, and Robert Walker. Counsel explained that he made this strategic decision because he wanted to focus solely on the issue of whether petitioner possessed the drugs or the gun and did not want to risk calling witnesses who could testify to petitioner's character. (R. 7:6-12). Rhodes, Nop, King, and Walker all testified at the punishment phase of the trial.[4]

Burnest Rhodes testified that he owns the house where petitioner and others were arrested,

---

[4]Petitioner acknowledged to the trial court that Mabel Hart, who could not be located by his attorney, would give substantially the same testimony as Robert Walker. (R. 7:12).

he had been attempting to remodel it, he had not leased it to anyone, and no one had permission to be in the house.  It had been broken into numerous times, with windows broken and the plumbing removed, and some friends had told him that they believed that drug activity was occurring there, so he had asked the police to watch the house.  Rhodes also testified that there was electricity at the house because of the remodeling, it was billed in his name, and there was no running water.  He did not know any of the people who were arrested in his house. (R. 8:10-18).

Rickey Nop testified that he ran a liquor store in town that petitioner frequented, that petitioner was a good and friendly customer, and that petitioner had offered to help in the past with community service work. (R. 8:19-23).  King testified that he is petitioner's half-brother, that petitioner is a "good guy," that petitioner is a cosmetologist who has worked for their father's funeral home and their uncle's construction company, and that petitioner therefore had opportunities to work for the family.  (R. 8:25-30).  Walker testified that he was a friend of petitioner's and that they were arrested at the same time.  He had testified that he had stopped by the house to leave rent money because he was intending to rent the home, that he was in the yard when he was arrested, that he had given the money to petitioner to give to a Mr. Maxwell who was renting out the house, and that he had asked petitioner to watch the house for him while he went to Waxahachie to see his parole officer.  Finally, Walker testified that he did not know about the crack cocaine in the kitchen or the drug paraphernalia and marijuana found in the house, that the gun was not his because he was a convicted felon and did not have a gun, and that he did not know why petitioner's court papers were found in the house. (R. 8:32-43).[5]

---

[5]  At the motion for new trial hearing, John Sickel testified that he was Robert Walker's trial attorney, that he would have advised Walker not to testify at the guilt phase of petitioner's trial, that he did not believe that Walker was mentally competent although he was determined to be competent to stand trial, and that based on his discussions with Walker, he does not believe that Walker's testimony would have been favorable to petitioner. (R. 9:7-8).

Petitioner asserts that counsel was ineffective for calling these witnesses at the guilt phase of the trial, as well as Officer Paskal and Officer Johns.  He does not present any evidence about what Officer Paskal and Officer Johns would have testified to other than that they were the officers who searched and secured the living room during the search of the house and subsequent arrests. (Petition at page R).

The state appellate court addressed this issue on direct appeal because the record contained defense counsel's strategic reasons for not calling certain witnesses at trial. *Bean v. State*, slip op. at 13.  That court went on to rule that petitioner had not shown that the testimony from the witnesses petitioner wanted to call would have been beneficial to him, and that therefore petitioner had failed to establish that his attorney was ineffective in choosing not to call them as witnesses. *Id*., slip op. at 16.  This claim was also denied on its merits at the state habeas level.

Petitioner has not shown that the state court's decisions on direct and collateral appeal were either an unreasonable application of the *Strickland* standard or contrary to federal law.  While petitioner wanted to call Burnest Rhodes to testify that petitioner did not own the house, this testimony would not have benefitted him.  As noted by the state appellate court, the prosecution did not have to prove that petitioner owned or rented the house to prove that he possessed the cocaine and the shotgun. *Id*., slip op. at 14.  Rhodes' testimony would have supported a conclusion that petitioner was living in the house illegally.  Rhodes' testimony that friends had expressed concerns to him that the house was being used as a drug house and that he had therefore asked the police to watch the house also would not have aided petitioner.

With regard to Robert Walker's testimony, even if Walker had opted to testify at petitioner's trial against his attorney's wishes, as the state appellate court noted, his testimony also would not have been beneficial to petitioner.  While it may have explained why petitioner had cash on him

when he was arrested, it would have directly contradicted Rhodes' testimony that he did not rent the house out to anyone and that no one had permission to be living in the home.  Walker denied knowing anything about the cocaine or the shotgun, and this also would not have aided in petitioner's defense. *Bean*, slip op. at 15.  Moreover, Walker's testimony would have been of limited persuasiveness.  He testified at the punishment hearing that he was arrested in the front yard, (R. 8:33), whereas Officer Jeremy Mack testified that Robert Walker was lying in the hallway of the house when the officers entered, (R. 6:87).

Any testimony from Rickey Nop and Richard King would not have been relevant to the issues to be decided by the jury at petitioner's trial.  At the punishment hearing, Nop only testified that petitioner was a frequent, friendly customer, and King testified that petitioner had, in the past, worked as a cosmetologist and in construction. (R. 8:19-27).  This testimony is not relevant to whether or not petitioner was in possession of cocaine or a shotgun when he was arrested by police.

Finally, there is no reasonable probability that petitioner would not have been convicted had Officers Paskal and Johns testified at trial.  According to petitioner, they would have testified about their roles in searching and securing the living room.  It was never in dispute at trial that the cocaine was found under a chair cushion in the living room and that petitioner was brought into the living room from another room in the house.  (R. 6:54, 61-2, 79).  Petitioner's third ground for relief is without merit and should be denied.[6]

## VI.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected

---

[6] Petitioner also complains about his attorney's representation of him during the suppression hearing.  Assuming that this claim was exhausted at the state level, petitioner has failed to allege or show that there is reasonable probability that the evidence seized would have been suppressed if his attorney had acted differently.  He has also failed to show prejudice because the state appellate court ruled that the search warrant was valid and that the search was not illegal.

in the state-court records, an evidentiary hearing appears unnecessary.

## VII.  RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant

to 28 U.S.C. § 2254.

**SIGNED on this 2nd day of February, 2010.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in
the manner provided by law.  Any party who objects to any part of these findings, conclusions and
recommendation must file specific written objections within 14 days after being served with a copy.
*See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify
the specific finding or recommendation to which objection is made, state the basis for the objection,
and specify the place in the magistrate judge's findings, conclusions and recommendation where the
disputed determination is found.  An objection that merely incorporates by reference or refers to the
briefing before the magistrate judge is not specific.  Failure to file specific written objections will
bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate
judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See
Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE